Your argument is 20-1812 Mondis Technology v. LG Electronics. Mr. McKeon, whenever you're ready. Thank you, Your Honor, and good morning. May it please the Court. There are three issues that provide an independent basis why the judgment below should be reversed. Written description, infringement, and standing. I'd like to start with written description. Mr. McKeon, this is Judge Hughes. Before you get started on that, can I ask you about the timeliness of this appeal? Sure, Your Honor. So, this is an interlocutory appeal, right? That's correct, Your Honor. And what is the interlocutory order that you're challenging? We're challenging the liability order, the September 2019 liability order. And why aren't you out of time? Because you didn't file an appeal within 30 days of that. Rule 4, Your Honor, applies to tolling here, as we've said in the briefing. Right. I understand the basics of your argument. Just so I'm not, like, hiding the ball, let me tell you, here's my problem. Rule 4 allows judgments to be tolled based upon a variety of motions that are directed at those judgments. There wasn't any motion directed at that interlocutory order, was there? Well, that's true, Your Honor. But remember that when the rule says all motions are resolved, the damages motion was pending until April of 2020. I get that entirely. And if this case had been an appeal from a final judgment and you waited until after all of the Rule 50 motions, we wouldn't be here. But it's not an appeal from a final judgment. It's an appeal from an interlocutory order. And I don't see any motions directed at that interlocutory order that would toll the time to file an appeal from that interlocutory order. That's correct, Your Honor. But remember, the 1292, there's no exception. We have 1291, 1295, 1292. There's no exception for damages interlocutory appeals under 1292 under Rule 4. In fact, it applies squarely in this case because the issue of damages was, you know, was hotly contested below. And we had multiple rounds of briefing. And that, in fact, could have disposed of all the issues. See, I understand this. And I don't understand why it makes any difference because we have a unique rule that allows in patent cases an interlocutory appeal of liability, which doesn't exist in any other civil case as far as I know. But if that's the case, then the language is final but foreign accounting. And you agree, I think, that the liability in this case was final but foreign accounting in September, that September order. And whether damages was final or not doesn't have anything to do with the 1292C2 appeal, does it? Well, I mean, certainly under 1292C, we've got a right under, and this is a unique thing for the Federal Circuit. But I don't see any language in the text of the statutes or the rule that carves out damages remedy or remedy-related motions under Rule 50. And that's the problem. There's nothing in the text that prevents the scenario that we are here today. And when we had the final judgment that the judgment went into effect by operation of statute, the liability motions were ruled on in September. We had that one outstanding motion. And it's really a perfect application of Rule 4. And there's nothing, nowhere in the text of the statute, nowhere in the rule, where there's some sort of carve-out, special carve-out for the Federal Circuit here under 1292. This is Judge Dyke. I mean, I think Judge Hughes may have a point here, because I don't think the time limits are established by Rule 4. The statute itself establishes the 30-day time limit. And you have a decision by the Supreme Court in the Budenich case, which is 486 U.S. 196, in which the Supreme Court said that the finality of a judgment is not affected by the pendency of a motion relating to attorney's fees. And the reason for that is that it doesn't affect the merits of the judgment. So under that Supreme Court case, I don't see how a motion that relates to solely damages affects the finality of the liability determination. But while I agree that you have a very good point about the language of Rule 4, I'm having trouble seeing how the language of Rule 4 is governing here when the time limit is statutory and the Supreme Court in this Budenich case has told us why motions are irrelevant if they don't relate to the merits of the underlying judgment. Well, I mean, the judgment, of course, was constructively entered, and the judgment was told under Rule 4. And 2107, of course, you're right, is the statutory text that gives you the 30 days. But under the Rule 4, we have to look to the finality question. And that's really, you know, under Rule 4, you're looking to, okay, when is it actually final? I guess the point is that Rule 4 can't overcome the statute and the construction of the statute that the Supreme Court has given to it. And, in fact, after the Budenich case, Rule 4 was amended to delete motions for attorney's fees, if I recall it, from the list of motions that counted, appearing to be a recognition that the rule has to follow the statute rather than the other way around. Yes, Your Honor. No, I mean, certainly the rule can't, you know, contradict the statute, and we agree with that. But I do think that read together holistically, you know, there's nothing in the language that changes that. And, you know, I'm quite frankly not familiar with the cases you cite, Your Honor. But what I can tell you is when we read the text of the statute, it all works together perfectly, and this case is the perfect application of that. When we had an outstanding motion that was not resolved, that could have resolved the case in a way where LG prevailed, and it would have been entirely different. And that's why we have the tolling to begin with. And it's perfectly consistent with the legislative history of the appellate rule here, Rule 4. But we're not talking about tolling a final judgment. We keep talking about final judgment. We're talking about when an interlocutory order becomes suitable for appeal under 1292C-2. And you agree the interlocutory order is September. There was nothing further that needed to be done after September, right? No, I disagree. That would be further your appealing program. I guess I quibble a little bit, Your Honor, about your characterizing. I mean, judgment was entered by 150 days from the jury verdict in early September of 2019. Judgment was entered on everything. And then, you know, we had our pending Rule 50 motions across the board on all issues. Right. So those issues, yes, some were resolved in the September 2019 order. No, not some. All liability issues were resolved in September, right? That is true. That is true. I mean, if all liability issues weren't resolved, then we don't have jurisdiction at all. All liability issues that made it interlocutory. I'm not going to argue with you. I think, you know, I understand your argument. I want to ask one more question, though. If we decide this appeal is untimely and dismiss it, you won't be barred from raising any of your liability-based merits issues after the new trial for damages. Should you lose on damages? And if you prevail on damages, then we won't have to see this again, or presumably not from your side. Thank you, Your Honor, for noting that. And I think Mondes conceded that in their red brief, that that is in fact the case in terms of if the court were to go in that direction. But unless there's any other questions, I'd like to turn to the written description argument, which we do think is positive on the merits. The patent, as I said earlier, requires a type of said display unit. And this is in the claim, which was amended in the Patent Office. And on cross-examination, Mr. Lamb, their expert, Mondes' expert, admitted that there's no express disclosure of a type ID number in the specification. And to this day, Mondes has been unable to identify anywhere in the written description where a type ID is disclosed. Well, let me ask you about that. Mr. Stevenson, one of the witnesses? That's correct, Your Honor. In the context of invalidity, said that the specs disclosure of an ID number is something like a serial number. And that's at 15157. And then in the context of non-infringement, he allowed that serial numbers could be a type ID. That's at 15168. So why isn't that enough to give the jury the idea that there is something in the specification that relates to the type? Well, to be clear here, Your Honor, Dr. Stevenson said, you know, that serial number is a hypothetical context. And they were never arguing that there were serial numbers disclosed in the specification because it's not disclosed. And this was really on the infringement side of the case where, and the dispute on the infringement side of the case, was whether certain bits in LG televisions constituted a type ID. And that was the discussion that was going on with respect to the cross-examination. It was not in the context of what the written description of the specification disclosed. Dr. Stevenson was very clear that the type ID was not disclosed. And these serial numbers, there is no disclosure of a serial number. It was only a hypothetical, could a serial number be a type ID in some context? And that was the discussion that you're referring to, Your Honor. He was very clear, though, that the specification is limited to IDs for specific displacements. And that's clear. There's nothing in the specification explicitly there. And, Your Honor, the Senate court case is really on point here. We've got to look at the four corners of the specification and the written description. I mean, where is it in the written description? When we established through cross-examination— Well, do you agree, do you not, that they could have—I mean, I know you'll say that they didn't do this. But they could bring in an expert in terms of how a person skilled in the art would read the specification as covering this. I mean, even if it's not there, they could have had rebuttal evidence that would be relevant to the question, would it not? That is true, Your Honor, but, you know, as this court has held, I mean, you've got to—because an expert says something, it doesn't make it so. And particularly on this written description question when the written description itself is what guides you. I know, but the problem we have is, you know, you've got a jury verdict against you. That's right. At the J-Mall, you know, the district court didn't talk about the serial number stuff. He did mention the question about your witness's impartiality. So let me ask you about that. You made two arguments in defense. You say, one, it wasn't really impeaching at all, and two, even if it were, it only would have affected non-infringement and not validity. I don't get your second point. If you're on a jury and you hear a witness talking about X and you figure out he's a liar, and I'm not suggesting that about your witness. I'm talking hypothetically. And then he testifies about a completely different thing. Isn't the jury free to transfer that conclusion that this guy is not to be believed over to everything else he says during the trial? So I'm not getting your second point. Your first one I get, and maybe you can give us a little more as to why the district court was wrong that this was not impeaching at all. Yeah, on the second point, Your Honor, we just cite the Integral Life Sciences case where it was suggested that it really had to go issue by issue on this. And none of the challenged evidence that we're talking about, written description, there was no impeachment on that point at all. But we don't need to carry the rule so far. I do understand the general concept that if an expert is brought down more generally, then maybe you can expand that. But on this point, when we're talking about the written description and what's disclosed, that testimony was unimpeached. And on the first point, and I think that is important, Your Honor, and they keep saying the expert was impeached and the district court in the JMO order, that was the only basis the district court – and I did hear the bell, so I will finish this, if I may. The district court only relied on this one point. And the issue there was our expert never disputed that there was RGB bits in the television. The only issue there was our expert said it was characteristic information. It wasn't type ID. They were saying it was type ID. We said it was characteristic information. The jury believed their expert, not our expert. That's not impeachment. And if you look at the testimony carefully, there's just no impeachment there. Yes, for sure, the jury went with their expert, not ours. But we just take issue with the characterization as it being impeachment. All right. I appreciate that. Thank you. We'll reserve the remainder of your e-box. Thank you. Thank you, Your Honor. Thank you. Mr. Black? Thank you, Your Honor. May it please the court. Let me begin with the timeliness of the appeal. And while this is an issue of first impression for the federal circuit, it is governed by the statutory text and determined by reading the language of the statutes at issue. Under 2192C2, an appeal will lie to this court for an interlocutory appeal only when a judgment is, quote, final except for an accounting. Well, Mr. Black, let me just interrupt and ask you how you look at Rule 4 and tell me how you reconcile what you're advocating here with the language in Rule 4. Yes, Your Honor. Is there a way to do it? Yes, I believe that there is. And in the brief we pointed out, if you look at Rule 4A, it just says, 4A4, and this goes along with what Judge Dyke was commenting about the case, the name of which I'm not sure I can pronounce properly, but established the same principle. What Rule 4A4 says is that if a party files in the district court any of the following motions under the federal rules of civil procedure, it doesn't say specifically motions as to what. If the rule is read, filing of any of the following motions relating to the judgment at issue, which is how we say it should be interpreted, then any conflict is resolved, and it makes perfect sense. If there's a judgment pending and there's a motion that could affect that judgment, then it works. The statute works. They read it as any of the following motions relating to any judgment, regardless of whether it could possibly have any effect. And that's the best way, we think, to look at the rule and is consistent with the case law that says you should interpret these rules to be consistent with the underlying statutory authority. If there were a conflict, you would have a problem under the Rules Enabling Act, and the statute would have to supersede the rule, but we don't have to get there. You can read this rule simply as saying any of the following motions relating to the judgment at issue. We have a timeliness rule built into the Interlocutory Appeal Statute 1292C2, and the appeal lies when the case is final except for an accounting, not final except for an accounting or some other motion on another issue. And, of course, the 30-day rule is required by 2107A, and that is jurisdictional and can't be waived. So if you were to read the rule otherwise, Your Honor, we would have a situation where the rule conflicts with statute and there's no savings provision under the Rules Enabling Act. Can I ask you, Mr. Block, just out of curiosity, I don't know that there's an answer to this question, but as your friend said, and I think you would agree, this is a question that has not come up before. So why hasn't it? Is it because everybody is assuming that they follow Rule 4 and that they don't raise an objection on timeliness, or is it because everybody knows that they've got to file it within 30 days if they've got the one judgment without an accounting? Do you want to speculate on that? I will speculate, Your Honor. I think it's because we had pending motion practice in front of the district court where the judge was unsure about whether he needed to hold a new trial on damages or could simply enter judgment and not give us a new trial. And we were litigating those issues, and we speculated that LG did not want to file the Notice of Appeal then, potentially irritating the district judge. That was our internal speculation. But the answer is that there's no indication that this issue has ever come up before, right? I mean, it's pretty unusual. That's true. It hasn't come up before, Your Honor. The only case we found which was close, at all close, was the Mickelson case that Your Honor wrote. Obviously, it's not on all fours. It does seem to adopt a principle, though. The basic principle, when there was an injunction and the appeal was from an injunction, the court proceeded with the appeal even though there were other post-trial motions pending. I don't see how the rule could be any different as a practical matter. If you have a right to take an interlocutory appeal, that's policy matter. You should take it immediately. Of course, there's no harm in filing an early Notice of Appeal if you turn out that it's early. But we can't have situations where the statute says an appeal lies, and then the party with the right to appeal is lackadaisical about taking the appeal. Well, that's exactly what the Budenich case says. That it's common ground in this case that the district court's decision on the merits was appealable before its determination of attorney's fees, and the merits appeal was untimely. Yes, Your Honor. So we submit that on the timeliness point that the appeal is not timely, that 1292C2 states the beginning of the appeal period, that the 30-day rule of 2107 states the end of the appeal period, and that even a federal rule of appellate procedure cannot trump the statutes under Bowles and Sedok v. Wilson. This is Judge Hughes. Can I just confirm with you what your friend on the other side said, which is if we dismiss this as untimely, if this comes back, all of the merits issues and liability will still be lied. There won't be any preclusive effect from this untimely appeal. That's correct. As the law stands now, Your Honor, I believe that is correct, that the interlocutory appeals under 1292C2 are optional. They can be delayed until the conclusion of the final judgment. Do you want to move on to the written description issue? Yes. I want to address written description, Your Honor, and make a couple of points. Written description, of course, it's a question of fact. LG bore the burden. They put up Dr. Stephenson. The district judge, he reviewed Dr. Stephenson's demeanor in the courtroom and made... Mr. Black, Judge Dyke has a question. Oh, I'm sorry, Your Honor. Looking at the specifications, there isn't any reference to a type identifier. So I guess quite apart from the testimony, you have a problem right there with the language of the specification, don't you? I mean, this is not a case in which you've argued that someone skilled in the art would know that there was possession of a type identifier. You've argued that it's right there, and I just don't see that it is right there. No, Your Honor. Yes, Your Honor. Below, we argued that someone of skill would know that a type identifier was understood based on reviewing the specification, the prior art, what was known to those of skill in the art. We had a summary judgment process in this case. Of course, that's not in front of the jury, so we didn't discuss it. At the jury trial, Dr. Stephenson made admissions, which made it unnecessary for us to put our expert on. But I would like to point to one portion of the specification that I think is quite important on your question. Just to be clear, you did not have any testimony in the jury trial that someone skilled in the art would know that the applicant had been in possession of a type identifier. We had some testimony from Dr. Stephenson about the presence of a serial number and that that was a type ID. We also had testimony from Mr. Lamb in his direct testimony about the meaning of a crucial passage of the specification at column 5, lines 60 to 67. At that portion of the specification, it discusses what's called the reverse case, where the number is sent from the display to the computer. The patent states, an ID number is sent to the computer from a display device, and then it tells us what the purpose of the ID number is, what it denotes, what information it conveys. Quote, so that the computer identifies that the display device having a communication function is connected. We know that Dr. Stephenson's view that the only thing that the ID number did was identify a unique display from all others in the world is absolutely wrong. He did not discuss this portion of the specification. But this portion of the specification doesn't say anything about a type identifier. It says that the ID number is sufficient to identify whether the device has a communication function. And elsewhere in Dr. Lamb's testimony, and this is at 15075 of the appendix, transcript pages 290 to 291, he said that in this case, the communication function that they're talking about, and he's the only one who testified on this passage, is an actual video format. So the ID number is defining what video format the display is capable of receiving. Our contention is that a video format is a type. Well, I'm a little confused, Mr. Black, just because I read the district court's opinion on Jamal to agree and not suggest otherwise, that there was no rebuttal evidence put on on this point. We did not take away sitting through the trial, right? Yes, well, there was rebuttal. We did not call Mr. Lamb in rebuttal. He did testify on direct during the infringement case in explaining the patent to the jury. He testified extensively on what the patent taught. And two of the things he pointed to were this passage at line 50 that talks about a communication function. And at A15075, he discussed that the communication function was a video format. And there's also a section of the patent, column one, lines 41 to 43, that discusses a video signal as this type of display device. We don't think it's a big jump, Your Honor, from an ID number which was disclosed that could uniquely identify a display, numbers that could provide characteristic information to the display, and using a number to identify a video format which is a type. If you walk into a video store today, a Best Buy, you'll see TVs. They're 4K, 1080p, HD. In the old days, that would have been RGB or monochrome. When read as a whole, the specification supports the type limitation, which is what the Patent Office concluded. And I take it, look, the Patent Office's rulings are not inviolate, but we do have a clear and convincing evidence standard. And in this case, two examiners who met during an examiner's interview with the applicant's representatives agreed to add this language to resolve a prior art rejection. I take your point, but that's obviously the case in every case because we wouldn't be here unless there was a live patent that the examiners had approved. So I'm not sure you're right about the standard. It just does seem quite unusual. Granted, they may not be compelled to put on rebuttal evidence, but even in CentiCorps, I believe, there was discussion and there was documentation in the specification that was cited to support it. And here, there's much less of that, if any. Well, the invention here is much simpler, Your Honor, and goes to the question of how do you configure a display to a computer in a world where there are lots of different types of displays? That's the configuration problem that both experts agreed was at issue here. And the issue is what would one of skill in the art with a bachelor's in science and engineering get out of reading the specification? It's their burden. After Dr. Stevenson testified, his testimony was so contradictory, he was really destroyed on the witness stand, and it was clear he had no credibility. They put in six or seven transcript pages of a written description case, more for the record in this court than in the district court. And we don't have to put up rebuttal testimony when that happens. That's the law. Now, of course, if we're wrong and we come up on appeal, we have nothing to work with. But here, something happened that we didn't know would happen. The district judge made explicit credibility finding here that the witness was not credible, in which case it's as if he didn't testify. Even if you ignore his testimony, you'd have a problem because there isn't anything in the spec that talks about a type identifier. Your Honor, at column five, line 60, I'll just come back to that, it discusses a communication function, separates the world into two types of displays, those with communication function X and those without communication function X. Our experts said that means a display type. So the ID number in that example is being used to determine whether a device falls within the display type of communication function A or B or C. That's a type. You don't need to be an electrical engineer to understand that. Unlike CentiCorps, where the technology was extremely complicated and really all it was described was a research plan with a potential million possibilities, this isn't one of those cases. Do you have a citation to the testimony you're referring to? Is it Dr. Lamb's? Yeah, sure, certainly, Your Honor. It's Mr. Lamb. It's at A15075, transcript pages 290 to 291, and he ties the ID number to a video format that I'd also point out, column one. Hold on. Where is this testimony? What page? I'm sorry, Your Honor. At the appendix 15075, which are transcript pages 290 to 91. Okay, but just hold on a second. What page of the transcript? 290 to 291. 290, 15. Okay, and where does he talk about the type? He doesn't use the word type. He says the communications function defines a video format. I misunderstood what you said. I thought you said he had talked about the type being in that section of the specification.  He said the communications function was a video format. Column one, lines 41 to 44 of the patent, tied video signal to type. I'm sorry, column one? Lines 41 to 44. And that's talking about the prior art? This is in the background section? Yes, it's in the background section, but it discloses that a video signal is a type to those of skill in the art, which I think is a fairly easy point to make, regardless of engineering background. And this is talking about in the prior art, right? Yes, which those of skill in the art are charged with knowing. Okay.  I think I heard the bell. Katie, did the timing go off? Yes. Any further questions from Judge Hughes or Judge Dyke? No. Okay. Thank you very much. Let's hear, I guess there's some rebuttal time left for Mr. McKean. There's about 30 seconds of rebuttal time. Okay. Well, we'll give you two minutes. Thank you, Chief Judge. I appreciate that. When the expert admitted on cross-examination that type ID is not expressly disclosed, the burden persuasion is always on us, but burden production is on them. And with respect to the column one site we just heard from, it is true that there is a reference to type in column one with respect to the prior art. There's never any linkage of that disclosure to an ID at all. It's just not in the specification. The column five, line 60 reference, Mr. Black provided some testimony here, but there's nothing as far as I can tell on the record on discussing that, column five, line 60, and certainly has nothing to do with type ID. In fact, column five, line 60, talks about ID, serial number, the ID number that the specification explicitly discloses in the specification, not type ID at all. Do you have a case site for the burden of production being on them? Yes, I do, Your Honor. Give me a moment here and we'll get to that. If it's in your brief, never mind. I don't want to change that. It is actually in the brief. Okay. Go ahead. Final statement because your clock is about to run out. Yes. The final statement is during the prosecution's history, they amended the claim to add type ID. So now to argue on appeal that the ID number of the specification, written description, you can bootstrap from there into type ID, that just doesn't, it's not supported by the prosecution's history. They added that and they specifically said during the Markman briefing at A1155 that type ID is different, something different than ID number of the spec, that you can't equate the two. And with that, I will rest. Thank you. And we thank both sides and the case is submitted. Thank you.